

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Patricia McLane*  *Suite 400*  *DIRECT: 410-209-4942*
*Assistant United States Attorney*  *36 S. Charles Street*  *MAIN: 410-209-4800*
*Patricia.McLane@usdoj.gov*  *Baltimore, MD 21201-3119*  *FAX: 410-962-0717*

November 15, 2022

The Honorable Stephanie A. Gallagher
United States District Judge
District of Maryland
Edward A. Garmatz United States District Courthouse
101 W. Lombard Street
Baltimore, MD 21201

      Re:    Sentencing in *United States v. Rashaud Nesmith*
                Crim. No. SAG-19-0486 and SAG-19-0036

Dear Judge Gallagher:

      The Defendant, Rashaud Nesmith, is scheduled for sentencing on November 28, 2022, at 2 p.m. Two people lost their lives and one life was irrevocably changed due to Nesmith's criminal activity in SAG-19-486; moreover, even more lives were taken and put in jeopardy due to his participation in SAG-19-0036. Therefore, a sentence of **480 months**' imprisonment is sufficient but not greater than necessary to comply with the goals of sentencing set forth in 18 U.S.C. § 3553(a).

## I. BACKGROUND

      Nesmith is a member of two violent and deadly enterprises. As a member of the "Foster" enterprise, members committed over a dozen carjackings, non-fatal shootings, robberies, and at least three homicides primarily during the summer of 2019 all for personal profit. The "Foster" enterprise's purpose was to carjack and rob individuals throughout east and west Baltimore City for personal property and to sell and divide the proceeds of those robberies among enterprise members. The purpose was also to conceal their acts. The enterprise used the carjacked vehicles to commit other robberies to avoid immediate detection; they also used the carjacked cars for personal use and "loaned" them to associates of the enterprise for personal use.

      Nesmith is also a member of "CCC" or "Triple C". CCC members shot and killed over 18 victims from 2015 through 2020. Members also committed over a dozen non-fatal shootings, street robberies and carjackings. Nesmith participated in at least three attempted murders of rival

gang members. Like the "Foster" enterprise, CCC existed for the personal benefit and glory of its members.

## II.     THE FOSTER ENTERPRISE

The core members of the "Foster" enterprise included Karon Foster, Malik Evans, Demonte Kellum, and two juveniles. The enterprise also used multiple associates including Jamai Wells and Daniel Williams, who either participated in the robberies or assisted the defendants after the robberies by hiding evidence and vehicles. The members do not identify themselves as a traditional gang; the defendants do not have a name, motto, written rules, or national recognition. Rather, the defendants are a local group who terrorized Baltimore City through a series of carjackings and street robberies.

On June 12, 2019, four men carjacked S.A. in his 2004 navy Acura MDX in front of the apartment complex at 4418 Franconia Drive. One of the men shot and killed S.A.'s friend, Tavon Lowther, during the robbery. Ballistic evidence, surveillance video, and cell site information would eventually lead ATF agents to connect that crime to at least seven suspects and approximately 24 acts of violence, beginning with a carjacking in April 2019, and ending with the non-fatal shooting of an off-duty Baltimore City police officer on August 8, 2019. Nesmith's participation in carjackings and robberies make him responsible for the death of Devon Chavis and Kendrick Sharpe.

## III.    THE CCC ENTERPRISE

"Cruddy Conniving Crutball", "CCC", or "Triple C", is an enterprise primarily based in east Baltimore City founded around 2014. The enterprise's main purpose was to commit violent acts to promote the reputation of the enterprise and to command respect from the neighborhood. The enterprise routinely used social media to identify and locate victims, and to communicate with each other and share information so each member could be aware of possible retaliation. The members do not identify themselves as a traditional gang; however, the defendants do a name, a handshake, and motivational rap videos. Like the "Foster" enterprise, the defendants are a local group who terrorized Baltimore City through a series of murdering rivals, street robberies and drug dealing.

The enterprise used at least fourteen firearms to commit crimes, often trading with each other or other groups to avoid detection through ballistic evidence. This ballistic evidence, coupled with social media posts and text messages recovered from phones seized during the investigation, tells the story of CCC's murderous run. The investigation of the enterprise began in 2018 focusing on the drug shop in the Darley Park area. It grew to encompass murders, attempted murders, and other acts of violence as the ballistic, social media, and phone evidence accumulated. The result was the Second Superseding Indictment which outlined Nesmith's participation.

Nesmith, a member of CCC since at least 2017, committed the attempted murders of four rival gang members between February and July 2019. Nesmith did not end his participation in the enterprise when he learned of other crimes committed by members. He did not tell members to stop; did not report crimes committed by members; in fact, he joked about the exploits of the enterprise with other members.

The Government further incorporates the finding of facts in the Pre-Sentencing Report ("PSR") in paragraphs 8 through 19. ECF 225. The Government now turns to the sentencing guidelines.

## IV.     UNITED STATES SENTENCING GUIDELINES

The Government agrees with the guidelines' calculations in the PSR. Nesmith is entitled to a two-level decrease based on his acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a); in addition, the Government shall make a motion under U.S.S.G. § 3E1.1(b) further reducing Nesmith's guidelines by one level. PSR ¶ ¶ 85-86. T

The Government agrees with the Criminal History calculation set forth in the PSR, which concludes that Nesmith is a criminal history category III. PSR ¶ 95. Nesmith's advisory guidelines range is life. The parties agree however, that a variant sentence of 480 months' incarceration sufficient but not greater than necessary to satisfy the sentencing factors in 18 U.S.C. § 3553(a).

## V.     THE RELEVANT SECTION 3553(a) FACTORS

The factors set forth in Title 18, United States Code, Section 3553(a) include: (1) the nature and circumstances of the offenses; (2) the history and characteristics of the Defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the Defendant; (6) the need to provide the Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentencing disparity among Defendants involved in similar conduct who have similar records. 18 U.S.C. § 3553(a).

A sentence of 480 months' imprisonment is sufficient but not greater than necessary to achieve the purposes of sentencing under § 3553(a). Nesmith and the Foster enterprise co-defendants planned and carried out a series of armed carjackings and robberies without regard to the victims' or the public's safety. This complete and utter lack of regard resulting the death of two completely innocent men. Chavis and Sharpe's sole fault was possessing property wanted by Nesmith and his Foster enterprise members. As a result, Chavis was gunned down after arriving home from a work trip in Miami; and Sharpe sat in his car talking to a friend when attacked by the enterprise.

This does not even account for the eighteen murders, countless non-fatal shootings, and robberies committed by members CCC. Nesmith personally participated in four attempted murders of rival gang members for the sole purpose of promoting the enterprise's status.

A very significant period of incarceration is necessary to provide just punishment, afford adequate deterrence, and protect the public. The Government believes this sentence is significant but not greater than necessary.

A. **Nature and Circumstances of the Offense, the Seriousness of the Offense, and the Need to Protect the Public from Further Crimes of the Defendant**

A 480-month sentence accounts for the fact that the crimes were heinous and resulted in several people losing their lives. Nesmith and the other Foster enterprise members went on a string of senseless violence over a short span of time, traumatizing their victims and their families. Nine carjackings, three armed robberies, two attempted armed robberies, one non-fatal shooting, and three deaths, two of which Nesmith personally participated in and are discussed below.

Devon Chavis turned 28 years old just six days before he died. His friends described him as "outstanding" and "the best." "Always a happy guy." He was a barber who was growing his business and had amassed tens of thousands of followers on social media. He had just come home from a birthday trip in Miami, eager to celebrate with his friends, when the members of the enterprise shot him multiple times in his stomach. Shortly before his death, Devon posted on Instagram, "I appreciate this birthday so much because hardest thing in life right now is trying to stay alive. . . . God bless you and be safe." He left behind a two-year-old daughter.

Kendrick Sharpe was 48 years old and a father of five. Kendrick served in the military and graduated from the Baltimore School for the Arts. "He wanted to do right, provide for his family and give something of himself to the community through his art," a friend told reporters shortly after his death. According to his family, one of the last things Kendrick did before he died was buy a homeless man some clothes. He had been working on his own clothing line and was planning a launch party for his birthday. The launch party never happened. Kendrick was shot multiple times outside his car, shortly before his birthday. Police performed CPR on scene to no avail. He died soon after at the hospital.

I.C. was a 22-year veteran of a local police department. He had been out on his lawn talking to a neighbor while off duty when he was shot multiple times. I.C. told the shooters he was a police officer and begged for his life. The shooter did not care; in fact, the shooter stole I.C.'s Baltimore City Police Department issued firearm. Below is a picture of I.C.'s firearm, taken approximately ten minutes after the shooting of I.C. and posted on Nesmith's iCloud account. In addition, agents recovered the firearm from Nesmith's home pursuant to a search warrant. I.C. was rushed to Shock Trauma and placed on life support. Thankfully, he survived, but he is paralyzed and now requires a wheelchair to move.



The recommended sentence accounts for the pain, loss, and tragedy that the Foster enterprise left in its wake. Just as importantly, the recommended sentence accounts for the years of terror inflicted on east Baltimore by Nesmith and other CCC enterprise members.

### B. History and Characteristics of the Offender

Clearly Nesmith's modus operandi is possessing and using firearms, and he started at a young age. PSR ¶¶ 90-91. He also steals property from others. Granted, Nesmith does not come from a place of means, but that does not justify the violent way he and his co-defendants tried to better themselves. Rather than getting a job, a degree, a legal source of income, Nesmith stole money and cars from others, and did so armed with his friends and firearms.

And this crime spree is not Nesmith's first criminal activity. The PSR outlines three juvenile involvements between 2016-2017, starting when Nesmith was only fifteen. PSR ¶¶ 89-91. Nesmith is a serial armed carjacker/robber with no regard for anyone's safety. Nesmith was under supervision for firearm possession at the time of this crime spree, and clearly a long period of incarceration is warranted to protect the public from Nesmith's proclivities.

From the PSR, it appears Nesmith had a good support system, though certainly not a privileged life. PSR ¶ 105. Nesmith is not unlike many other residents of Baltimore City. However, he chose to lean into his life of crime, rather than asking for help to better himself. As a result, Nesmith must now face the consequences of his choices.

### C. The Need to Afford Adequate Deterrence.

Taking deterrence into account, a 480-month sentence is the appropriate sentence in this case. Nesmith has not served any time in prison prior to his arrest in this matter. This significant amount of incarceration is warranted because of the seriousness of the crime he admits to committing.

Further, imposing a 480-month sentence promotes general deterrence while not being greater than necessary. This sentence tells others that if you take someone's car or property wielding a firearm, or if you take someone's life, you will spend a significant amount of time behind bars. Under all these circumstances, a 480-month sentence is the appropriate sentence in this case to reflect Nesmith's history and characteristics and to afford adequate deterrence.

### VI. CONCLUSION

For these reasons, the Government respectfully submits that 480 months' imprisonment would be sufficient but not greater than necessary to achieve the purposes of sentencing under § 3553(a).

Very truly yours,

Erek L. Barron
United States Attorney


_____/s/_____
Patricia McLane
Brandon Moore
Assistant United States Attorneys

cc: counsel of record